## A98A1610. JACKSON v. THE STATE.
### (504 SE2d 505)

ELDRIDGE, Judge.

Seventeen-year-old Ezekiel Jackson was stopped for speeding on South Cobb Drive at 11:30 p.m. on September 9, 1995. There were two other young people in the car with Jackson. The patrol officer smelled a strong odor of alcohol emanating from the vehicle and asked Jackson to exit the car. The officer then detected a strong odor of alcohol emanating from Jackson. Field sobriety tests were performed, including an alco-sensor test. Based on the results thereof, Jackson was arrested and transported to the Smyrna Police Department where implied consent warnings were given, consent to a breath test was received, and a breathalyzer test was administered. Jackson registered .12 on the Intoximeter 5000.

Jackson was charged with DUI — less safe driver; DUI — .10 or above; speeding; and under-age possession of alcohol. As a part of the State's case, a Cobb County jury heard testimony from the arresting officer, who also conducted the Intoximeter 5000 test, and viewed a videotape of the traffic stop, which included Jackson's performance of the field sobriety tests. The jury found Jackson guilty as charged. He appeals the conviction, and we affirm.

1. In his first enumeration of error, Jackson contends that the results of the post-arrest breath test performed on the Intoximeter 5000 should have been suppressed because he was not given warnings pursuant to *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), prior to the test's administration.

"Where an entirely different objection is presented on appeal, we cannot consider it because this is a court for review and correction of error committed in the trial court. It is well established that appellate courts may not consider objections to evidence not raised at trial." (Citations and punctuation omitted.) *Hale v. State*, 220 Ga. App. 667, 670 (469 SE2d 871) (1996). In the court below, Jackson raised the issue of *Miranda* only as it relates to the admissibility of the field sobriety test results, because said tests allegedly occurred during the "functional equivalent of arrest." *Miranda* was not raised in relation to the admissibility of the Intoximeter 5000 breath test. Accordingly, we will not consider this enumeration of error.

2. Next, citing *Brown v. State*, 268 Ga. 76 (485 SE2d 486) (1997) (*"Brown"*), Jackson alleges that the State failed to lay a proper foundation under the "business records hearsay exception," OCGA § 24-3-

14, so as to permit the introduction of the certificate of inspection for the Intoximeter 5000 on which his breath test was performed; thus, Jackson contends that the trial court erred in admitting the results of the test. The State, however, argues that a certificate of inspection for a breath test machine is "self authenticating" pursuant to OCGA § 40-6-392 (f) and thus, is properly admitted absent such business records foundation. Accordingly, we are, for the first time, squarely confronted with the self-authentication provision of OCGA § 40-6-392 (f) in relation to the Supreme Court of Georgia's holding in *Brown*.[1] In considering the issues raised, we find merit in the State's position.

(a) OCGA § 40-6-392 (f) provides that "[e]ach time an approved breath-testing instrument is inspected, the inspector shall prepare a certificate which shall be signed under oath by the inspector and which shall include the following language:

" 'This breath-testing instrument (serial no. ___) was thoroughly inspected, tested, and standardized by the under-signed on (date ___) and all of its electronic and operating components prescribed by its manufacturer are properly attached and are in good working order.'

"When properly prepared and executed as prescribed in this sub-section, the certificate shall, *notwithstanding any other provision of law, be self authenticating, shall be admissible in any court of law*, and shall satisfy the pertinent requirements of [OCGA § 40-6-392 (a) (1) and OCGA § 40-5-67.1 (g) (2) (F)]." (Emphasis supplied.)

Clearly, then, the statute on its face contains a "self authentica-tion" provision which provides the procedure for the admission of the certificates. Moreover, and contrary to Jackson's position, the Supreme Court of Georgia's decision in *Brown* does not impact on such procedure. That decision addressed whether certain documents are admissible into evidence *at all*, and not the method by which otherwise admissible documents are tendered for admission. In law, the *admissibility* of evidence and the procedures for *admission* are two different issues.

In *Brown*, the Supreme Court of Georgia examined the admissi-bility of a certificate of inspection of a breath test machine in relation to the Confrontation Clause of the Constitution. The Supreme Court found that the constitutional infirmities addressed by the Court in its decision in *Miller v. State*, 266 Ga. 850 (472 SE2d 74) (1996) ("*Miller*"), were not present with regard to the admissibility of such certificate of inspection.[2] This finding was due primarily to two

---

[1] Compare our decisions in *Mullinax v. State*, 231 Ga. App. 534 (499 SE2d 903) (1998); *Hamilton v. State*, 228 Ga. App. 285 (491 SE2d 485) (1997); and *Daniel v. State*, 227 Ga. App. 92 (488 SE2d 129) (1997), wherein the issue was the *sufficiency* of testimony which attempted to establish a business records foundation.

[2] In *Miller*, the Supreme Court of Georgia struck down a provision of the Code that

distinguishing factors.

First, the Court recognized in *Brown* that "in reality the witness against the defendant, the source of the crucial and incriminating evidence, is not the analyst, but the machine itself. The certificate in issue here [unlike in *Miller*] addresses only the performance of the breath-testing device in calibration tests conducted to ensure its accuracy when it is subsequently used to analyze a person's alcohol concentration level and in no manner represents or substitutes for the analysis itself." (Citations and punctuation omitted.) Id. at 79. In that regard, "[o]rdinarily, a witness is considered to be a witness 'against' a defendant for purposes of the Confrontation Clause only if his testimony is part of the body of evidence that the jury may consider in *assessing his guilt*." (Emphasis supplied.) *Cruz v. New York*, 481 U. S. 186, 190 (107 SC 1714, 95 LE2d 162) (1987). A purely foundational witness is unable to testify as to any element of the charged offense and thus is not considered a witness "against" a criminal defendant for purposes of traditional Confrontation Clause analysis.

Second, the Court determined in *Brown* that a certificate of inspection of a breath test machine does not violate the Confrontation Clause because such certificate falls within the "firmly rooted" business records exception to the hearsay rule. The Court noted that "[o]ut-of-court statements which fall within a firmly-rooted hearsay exception are deemed to satisfy the constitutional requirement of reliability usually provided by a witness's oath-taking and subjection to cross-examination because of the judicial and legislative experience assessing the trustworthiness of that type of out-of-court statement." (Citation and punctuation omitted.) Id. at 77; see also *Livingston v. State*, 268 Ga. 205, 210 (486 SE2d 845) (1997).

Consequently, as it relates to the Confrontation Clause, the Court in *Brown* found that a certificate of inspection is simply a record made in the regular course of business, which includes the keeping of records of departmental compliance with OCGA § 40-6-392. Id. at 78. Further, such certificate of inspection does not contain the "opinion" of a third party, but instead, constitutes factual statements that the breath test device complies with the requirements of the statute and can thus continue to be used. Id. at 79. The Court held that "breath testing device certificates are routinely promulgated and maintained. They uncontrovertedly are *not* made in response to litigation against any one particular individual, unlike the certificate in *Miller* setting forth lab results conducted on specific

---

attempted to "short cut" certain criminal drug prosecutions by authorizing the admission into evidence of a sworn certificate by the employee of the GBI crime laboratory who analyzed the drug at issue in the trial; such was determined to be a violation of a criminal defendant's constitutional right to confront the witness against him. Id. at 851.

substances seized from particular individuals and for use only in litigation against those individuals. We therefore conclude that, in the usual circumstance, breath-testing device certificates are records made within the regular course of business within the meaning of OCGA § 24-3-14 and may, *upon the proper foundation being laid*, be introduced into evidence under the business record exception to the hearsay rule." (Emphasis supplied.) Id. at 80-81.

So, per *Brown*, a certificate of inspection of a breath test instrument does not impact on the Confrontation Clause of the Constitution because the declarant is not a witness "against" a criminal defendant within traditional constitutional analysis, and because the certificate of inspection falls within a well-recognized exception to the hearsay rule.

However, in finding that a certificate of inspection is *admissible*, the Court's decision in *Brown* did *not* address the procedures for *admission*. It was not an issue in that case. Thus, while recognizing that a "proper foundation" must be established, the Court in *Brown* did *not* hold that the foundational provisions of OCGA § 24-3-14 for the admission of business records is the *only* method by which a "proper foundation" for the admission of a certificate of inspection can be supplied. Specifically, the Court in *Brown* did not address the self-authenticating provision of OCGA § 40-6-392 (f) with regard to the establishment of a "proper foundation." We do so now.

(b) In the law of evidence, authentication is "the act or mode of giving authority or legal authenticity to a statute, record, or other written instrument, or a certified copy thereof, so as to render it legally admissible in evidence." Black's Law Dictionary, 5th ed., p. 121. In addition, "self-authentication" may be provided for by statute and refers to "certain classes of writings [which] shall be received in evidence 'without further proof.'" Id. In fact, our legislature has provided for many instances of "self authentication" wherein the document at issue is capable of admissibility by certification alone and "without further proof."[3]

Most importantly, the "rule against hearsay" does not bar self-authentication procedures contained in a statute. "[T]he method of introduction of the document would not change the law regarding the

---

[3] See, e.g., OCGA §§ 34-8-194 (admissibility of lab test results in unemployment benefits dispute); 7-1-95 (admissibility of documents of Department of Banking and Finance); 40-5-2 (admissibility of records of application for licenses); 42-5-36 (admissibility of inmate information from Department of Corrections); 48-5-306 (admissibility of notice as to changes in taxpayer's return); 53-3-43 (admissibility of foreign will); 24-3-17 (admissibility of copies of any record of the Department of Public Safety or comparable agency); 24-7-8 (admissibility of medical records); 24-7-20 (admissibility of certified public records); 24-7-27 (admissibility of records of Department of Corrections); 24-7-25 (admissibility of nonjudicial records); 24-7-26 (admissibility of foreign judgments); and 24-7-21 (admissibility of judicial records).

admissibility of its contents[.]" *Dennis v. Adcock*, 138 Ga. App. 425, 429 (226 SE2d 292) (1976). As addressed above, the rule against hearsay bars the *admissibility* of the contents of a document in the first place. Once, as here, a document fits within a recognized hearsay exception, the legislature's method of authenticating the document, which is otherwise admissible, does not impact on the hearsay rule. *Moody v. State*, 244 Ga. 247, 249 (4) (260 SE2d 11) (1979); *Dennis v. Adcock*, supra; see also *McGaha v. State*, 221 Ga. App. 440, 441 (471 SE2d 533) (1996) (statutes merely pertaining to evidentiary *authentication* of documents do not affect hearsay considerations).

Self-authenticating language in a statute cannot be ignored, and this Court must construe such provision in order to give meaning to the legislative intent. "It is, of course, fundamental that the cardinal rule to guide the construction of laws is, first, to ascertain the legislative intent and purpose in enacting the law, and then to give it that construction which will effectuate the legislative intent and purpose. Although the legislative intent prevails over the literal import of words, where a constitutional provision or statute is plain and susceptible of but one natural and reasonable construction, the court has no authority to place a different construction upon it, but must construe it according to its terms." (Citations and punctuation omitted.) *Leota Properties v. Banc One Lexington*, 212 Ga. App. 508, 509 (441 SE2d 920) (1994).

In that regard, OCGA § 40-6-392 (f), by legislative fiat, specifically provides a foundation for the admission of a certificate of inspection.[4] The general assembly determined that, "notwithstanding any other provision of law" (which, by definition, would include the business record foundation requirements of OCGA § 24-3-14), a certificate of inspection is self authenticating *when* it is "prepared and executed, as prescribed in this subsection." Id. Under the statute, the "foundation" for the admission of such certificate is: (1) the certificate is signed under oath by the inspector; and (2) the certificate contains the requisite language of OCGA § 40-6-392 (f). Once completed as specified under the statute, the certificate "is admissible in any court of law," without further proof.

Therefore, OCGA § 40-6-392 (f), itself, contains the "proper foundation" for admission of a certificate of inspection. After this proper foundation has been satisfied, the document may be admitted. A further foundation under the "business records exception," OCGA § 24-

---

[4] The legislative intent is made manifest within the caption of the 1995 amendment to Title 40 of the Official Code of Georgia, which created OCGA § 40-6-392 (f). A primary purpose for the amendment was in order "to provide for the admissibility of [ ] breath samples" taken for the purpose of determining whether a person is driving under the influence of alcohol or drugs. Ga. L. 1995, p. 1160.

3-14 (b), is rendered unnecessary by legislative enactment. It does not follow that simply because a certificate of inspection falls within the business records exception to the hearsay rule so as to make it *admissible* under the auspices of that exception, the legislature cannot statutorily provide a different foundational requirement for its *admission* than that generally found under the exception.[5]

In this case, a certificate of inspection for the Intoximeter 5000 upon which Jackson's breath test was conducted was tendered by the State. It was identified by the arresting officer, and the certificate met the foundational requirements of OCGA § 40-6-392 (f). The trial court admitted the document without further proof. We find that the trial court did not err in such admission.

3. We have examined Jackson's two remaining enumerations of error and find them meritless. Our decision in Divisions 1 and 2 above renders Jackson's contentions regarding a directed verdict moot. Further, pursuant to discovery, the State was not required to "disclose" to Jackson a witness that Jackson himself had subpoenaed as a witness for the defense. OCGA § 17-16-10.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED JULY 9, 1998 —
RECONSIDERATION DENIED JULY 27, 1998 — 

*James H. Carter, Jr.*, for appellant.
*Barry E. Morgan, Solicitor, Alice B. Kamerschen, Assistant Solicitor*, for appellee.

---

[5] Several decisions of this Court have recognized the self-authentication provision of OCGA § 40-6-392 (f). See, e.g., *Caldwell v. State*, 230 Ga. App. 46 (495 SE2d 308) (1997) (certificates are self-authenticating and satisfy the State's requirement of proof); *Chastain v. State*, 231 Ga. App. 225 (498 SE2d 792) (1998) (statute provides that a properly prepared certificate of inspection shall be self-authenticating and admissible in court); *Kollman v. State*, 231 Ga. App. 630 (498 SE2d 745) (1998) (referencing certificate of inspection as self-authenticating); see also *Evans v. State*, 230 Ga. App. 728 (497 SE2d 248) (1998) and *Sisson v. State*, 232 Ga. App. 61 (499 SE2d 422) (1998) (mere identification of the certificate by non-declarant testing officer sufficient to authorize admission under the statute).